UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE CLEVELAND and STEVEN MANKOFF,<br><br>           Plaintiff,<br><br>    v.<br><br>ORACLE CORPORATION, SIEBEL SYSTEMS, INC., SIEBEL SYSTEMS, INC. SENIOR EXECUTIVE RETENTION BENEFIT PLAN,<br><br>           Defendants.<br>_____/ | No. C 06-7826 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendants' Motion to Compel Arbitration and Stay Proceedings** |

On December 21, 2006, plaintiffs Bruce Cleveland and Steven Mankoff ("plaintiffs") brought this action against defendants Oracle Corporation ("Oracle"), Siebel Systems, Inc. ("Siebel") and Siebel Systems, Inc. Senior Executive Retention Benefit Plan ("the Plan") (collectively "defendants"), asserting claims pursuant to Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. sections 1132(a)(1)(B) and 1132(a)(3). Defendants now move to compel arbitration of all claims asserted in plaintiffs' complaint and to stay further proceedings pending arbitration. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiffs are former senior executives of Siebel. Complt. ¶ 5. Siebel's board of directors executed the Plan in May 2005. Id. ¶ 7. Under the terms of the plan, senior executives were entitled

to multiple options in the event that a change of control of Siebel occurred. Id. The Plan provided that, if an executive did not receive a comparable job or job offer after a change of control, the executive would be entitled to eighteen months of salary and fully-paid COBRA benefits, as well as the acceleration of restricted stocks and options. Id. Additionally, the Plan contained an arbitration clause. Id., Exh. 1 at 11.

In September 2005, Siebel was acquired by Oracle. Id. ¶ 5. According to the complaint, Siebel's then-CEO admitted to plaintiffs at that time that the Plan had been modified substantially as part of the negotiation process with Oracle. Id. ¶ 14. Plaintiffs further assert that, as a result of these modifications, the co-President of Oracle did not intend to write "welfare checks" to Siebel executives. Id. ¶ 17. The amended Plan was adopted in August 2006. Id. ¶ 12. The amended plan also contains an arbitration clause. Id., Exh. 2 at 10–11.

Cleveland's employment was terminated on February 28, 2006. Id. ¶ 18. Plaintiffs assert that Oracle had no positions fit for Cleveland, who had been Siebel's Senior Vice President and General Manager, Products. Id. Mankoff's employment was also terminated on February 28, 2006, Oracle having no suitable positions for Mankoff, who had been Siebel's Senior Vice President Global and Technical Services. Id. ¶ 32. Plaintiffs assert that Oracle offered each of them unsuitable positions that would have represented material reductions in duties, responsibilities and career advancement. Id. ¶¶ 31 & 48.

On March 6, 2006 plaintiffs each sent separate letters to Oracle demanding benefits pursuant to the Plan. Id. ¶ 49. The following month, Oracle denied benefits to both plaintiffs. Id. ¶ 50. On June 6 or 7, 2006, plaintiffs submitted separate Requests for Review to Oracle. Id. ¶ 55. Oracle denied these requests in October 2006. Id. ¶ 60.

Plaintiffs brought this action in December 2006, asserting that the amendments to the Plan pursuant to the Oracle negotiations violated the terms of the Plan and Title I of ERISA, and seeking to enforce their rights and recover benefits under the Plan. Defendants now move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 1 et seq., or in the alternative pursuant to California Code of Civil Procedure section 1281, and to stay these proceedings pending arbitration.

LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements. Arbitration is a matter of contact, and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Accordingly, the court's role under the Act is limited to (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir.1999). On the other hand, a district court retains the inherent power to stay litigation "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for the litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). In exercising this power, the court must balance the hardship and inequity of allowing the action to proceed with "the ossification of rights which attends inordinate delay." Yong v. INS, 208 F.3d 1116, 1119 (9th Cir.2000) (internal quotations omitted).

DISCUSSION

Plaintiffs do not dispute that the FAA applies to this matter. Opp. at 4. Rather, plaintiffs assert that the arbitration provision cannot be enforced because the terms of the provision prevent plaintiffs from vindicating their statutory claims, and because the arbitration agreement is unconscionable. "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 98 (2000); see also 9 U.S.C. § 2. Accordingly, if the arbitration agreement in the Plan is invalid based on general contract principles, it may not be enforced against plaintiffs.

I.  Applicable Law

At the outset the parties disagree as to whether state or federal common law governs the enforceability of arbitration provisions under ERISA. In general, contract defenses to arbitration

3

provisions pursuant to the FAA are governed by state contract law. Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (2002) ("In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'") (quoting First Options of Chicago, Inc. v. Kaplan, 541 U.S. 938, 944 (1995)).  However, ERISA itself contains extremely broad preemption language, stating that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA.  29 U.S.C. § 1144(a).  Defendants therefore argue that federal common law governs the interpretation of ERISA plans irrespective of state law requirements.  The distinction, however, is not so clear cut.  Rather, the Ninth Circuit has held that, because "ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans[,] . . . Congress intended for the courts, *borrowing from state law where appropriate*, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1501–02 (9th Cir. 1985) (emphasis added).[2]  ERISA is therefore governed by an overall federal scheme drawing from state law principles.

In light of the applicability of federal common law to ERISA claims, defendants assert that plaintiffs' reliance on Armendariz, a California Supreme Court decision, is misplaced.  Armendariz considered whether an arbitration agreement was enforceable as to claims under California's Fair Employment and Housing Act, Cal. Gov. Code sections 12900 et seq.  The court, finding that the inquiry under the FAA and the California Arbitration Act would be the same, applied federal FAA principals to determine whether the agreement was enforceable.[3]  Armendariz, 24 Cal. 4th at 99. The court ultimately imported requirements for arbitration agreements from Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465 (D.C. Cir. 1997).  In Cole, 105 F.3d at 1482, the court held that an arbitration agreement was enforceable in the Title VII context where the agreement

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs *or* any arbitrators' fees or expenses as a condition of access to the arbitration forum.

4

The court in Armendariz, 24 Cal. 4th at 102, suggested that these requirements are applicable to any arbitration agreement implicating nonwaivable statutory rights. Defendants dispute that this framework applies to ERISA, and assert that the court may not properly rely on Armendariz for this holding.

Armendariz aside, other courts have invoked the Cole framework in the ERISA context without comment. See, e.g., Brooks v. Travelers Ins. Co., 297 F.3d 167, 171 (2d Cir. 2002) (citing Cole in an ERISA action for its holding that "arbitration must 'provide[ ] for all of the types of relief that would otherwise be available in court'"); Dowley v. Dewey Ballantine, LLP, No. 05-622 (EGS), 2006 WL 1102768, at *4 (D.D.C. Apr. 26, 2006). Additionally, the holding in Cole itself is quite broad, stating that the factors are necessary to determine whether, under the terms of the arbitration agreement, the employee "'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" Cole, 105 F.3d at 1482 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)). The Ninth Circuit has held that ERISA is comparable to Title VII and the Fair Labor Standards Act in terms of its procedural requirements. See Amaro v. Continental Can Co., 724 F.2d 747, 752 (9th Cir. 1984) (holding that claims under section 510 of ERISA, like claims based on Title VII and the FLSA, are nonwaivable). The Ninth Circuit further suggested that procedural limits such as these are "based not on the *type* of non-waivable statutory right involved, but rather on placing realistic limits on the arbitration process when it is in tension with non-waivable statutory rights." Id. Accordingly, the fact that ERISA claims are nonwaivable brings them comfortably within the framework of Cole, and the relevant factors must be satisfied to compel arbitration under the FAA.[4]

That being said, the Ninth Circuit has stated in dicta that, even where a plaintiff shows that an ERISA-governed plan's arbitration clause "conflicts with statutory provisions or regulations governing the judicial review of benefits determinations under ERISA," the FAA's "strong policy in favor or arbitration" may nonetheless "tip the scales" toward compelling arbitration. Chappel v. Lab. Corp. of America, 232 F.3d 719, 725 n.4 (9th Cir. 2000). The Ninth Circuit was apparently aware of the Cole framework when it reached this conclusion, as the Chappel opinion cites Cole elsewhere. Id. at 725. Accordingly, while policy considerations weigh in favor of arbitration in

marginal cases, an enforceable arbitration clause must still allow the employee to "effectively . . . vindicate [his or her] statutory cause of action in the arbitral forum." Cole, 105 F.3d at 1482 (internal quotations omitted).

## II. Enforceability Under the FAA

Turning to the Cole factors, plaintiffs acknowledge that the Plan's arbitration provision meets the first through third, and fifth factors. However, plaintiffs assert that the provision is unenforceable because it fails to "provide[] for all of the types of relief that would otherwise be available in court." Cole, 105 F.3d at 1482. Specifically, plaintiffs assert that the provision (1) denies plaintiffs the equitable relief available under ERISA, (2) prohibits an arbitrator from awarding attorneys' fees and (3) requires an arbitrator to employ a more deferential standard of review than allowed in the Ninth Circuit. The court will consider each purported defect in turn.

### A. Equitable Relief

Citing Section 11(b) of the Plan (Section 12(b) of the non-amended Plan), plaintiffs assert that the plan improperly limits the relief available to plaintiffs. Section 11(b) provides:

> Except as otherwise specifically provided in this Plan, the provisions of this Section 11 shall be absolutely exclusive for any and all purposes and fully applicable to each and every dispute regarding the Plan, including any claim which, if pursued through any state or federal court or administrative proceeding, would arise at law, *in equity* or pursuant to statutory, regulatory or common law rules, regardless of whether such claim would arise in contract, tort or under any other legal *or equitable* theory or basis. *The arbitrator shall have jurisdiction and authority to award only Plan benefits and prejudgment interest; and apart from such benefits and interest, the arbitrator shall not have any authority or jurisdiction to make any award of any kind* including, without limitation, compensatory damages, punitive damages, foreseeable or unforeseeable economic damages, damages for pain and suffering or emotional distress, adverse tax consequences or any other kind or form of damages. The remedy, if any, awarded by such arbitrator shall be the sole and exclusive remedy for each and every claim which is subject to arbitration pursuant to this Section[.]

Complt., Exh. 1 at 11; Exh. 2 at 11 (emphasis added).  ERISA, however, explicitly allows for "appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  Plaintiffs therefore claim that the arbitration provision denies relief that would be available in court.

In response defendants raise two arguments.  First, defendants claim, for reasons set forth in their recently filed Motion for Judgment on the Pleadings, that plaintiffs cannot state a claim for relief under section 1132(a), and that therefore equitable relief would not be available to them in a court proceeding.  As this contention is the subject of a separate motion, the court will not address this question now.

Second, defendants assert that the available relief under section 1132(a) is an issue to be decided by an arbitrator, apparently suggesting either that the arbitrator could decide whether equitable relief is available notwithstanding the language of the Plan, or that equitable relief would not be guaranteed in a court and therefore need not be available in arbitration.  Reading Section 11(b) in the context of the plan as a whole, the arbitration agreement is ambiguous as to whether the arbitrator is empowered to grant equitable relief.  The examples of unavailable awards are each a species of damages, indicating that the limitation in Section 11(b) applies only to awards of monetary damages.  In other words, a reasonable interpretation of the clause is that the use of the word "award" in the phrase "The arbitrator shall have jurisdiction and authority to award only Plan benefits and prejudgment interest" refers only to monetary "awards," and is not coterminous with the broader concept of "relief."  Reading the clause as a limitation only on the types of available monetary relief would leave open the possibility of equitable relief, especially given the fact that Section 11(b) explicitly states twice that the arbitration provisions in Section 11 are applicable to claims in equity.  The FAA "created a rule of contract construction favoring arbitration."  Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996).  Accordingly, the court will adopt the construction favoring enforceability.  The clause provides for equitable relief, and the clause is therefore not unenforceable on that basis.

  B.  Attorneys' Fees

7

Plaintiffs assert that the original Plan, adopted in May 2005, provided for the company to pay attorneys' fees and costs incurred by an employee pursuing benefits under the Plan, but that the amended Plan, adopted in September 2005, struck the provision allowing for attorneys' fees. The Ninth Circuit has held that a prevailing plaintiff in a section 1132 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations omitted). Defendants assert that the provision in the amended Plan does not invalidate the arbitration agreement because the attorneys' fees provision of ERISA is waivable. In support of this proposition, defendants cite United States v. Mezzanatto, 513 U.S. 196, 200–201 (1995). That case stands for the general waivability of statutory rights. Courts have elsewhere held that specific statutory rights, including ERISA rights, are not waivable. However, plaintiffs point to no authority, and the court has found none, specifically holding that the right to attorneys' fees is necessary to enforce an ERISA-governed contract.[5] To the contrary, Ninth Circuit dicta indicates that the FAA's "strong policy in favor of arbitration" allows for enforcement of arbitration provisions that are inconsistent with ERISA provisions. Chappel, 232 F.3d at 725 n.4.

Additionally, defendants argue that the arbitrator may decide whether to award attorneys' fees notwithstanding the differing provisions of the two Plans. The original Plan contains a specific attorneys' fees provision, Section 7, and states that, "[s]ubject to Section 7, each party to any dispute regarding the Plan shall pay the fees and costs of presenting his, her or its case in arbitration." Complt., Exh. 1 at 8 & 11. The amended Plan does not contain Section 7 or its equivalent, and the phrase "[s]ubject to Section 7" has been stricken from the provision related to fees and costs. Complt., Exh. 2 at 10. At best, therefore, the amended Plan is silent as to attorneys' fees, but implies that the arbitrator lacks jurisdiction to award fees.

Finally, defendants assert that plaintiffs should be barred from raising the attorneys' fees provision in support of their unenforceability argument because it creates an inconsistent position. Plaintiffs' overall claim is that the original Plan, not the amended Plan, is operative. Because the attorneys' fees provision appears in the original Plan, defendants argue, plaintiffs cannot claim that the applicable arbitration provision bars recovery of attorneys' fees. While nothing prevents

8

1 plaintiffs from taking inconsistent alternative positions, the possibility that an arbitrator could
2 determine that the original Plan is operative and therefore award attorneys' fees weighs against
3 invalidating the arbitration clause solely on the basis of its failure to adequately provide for
4 attorneys' fees.

### C.     Standard of Review

Finally, plaintiffs object to the arbitrator's standard of review as established by the Plan. The amended Plan states that the arbitrator shall "apply the standard of a reviewing court under ERISA, namely that such decision shall be affirmed unless the arbitrator finds it to be arbitrary and capricious." Complt., Exh. 1 at 11; Exh. 2 at 10. Plaintiffs claim that the "arbitrary and capricious" standard is not the proper standard of review for their causes of action, and that the arbitration agreement therefore impermissibly limits the relief available.

Plaintiff's first cause of action asserts that defendants violated 29 U.S.C. section 1102(b)(2), and seeks injunctive relief pursuant to 29 U.S.C. section 1132(a)(3). Plaintiffs therefore argue that their first cause of action requires interpretation of section 1102(b)(2), which is subject to *de novo* review. Arnold v. Arrow Transp. Co. of Delaware, 926 F.2d 782, 785 (9th Cir. 1991). Defendants do not dispute that *de novo* review is the proper standard for statutory interpretation, but nonetheless claim that the provision quoted above does not render the arbitration agreement unenforceable, for a number of reasons. First, defendants once again claim that plaintiffs cannot state a claim under section 1132(a), a question the court will not reach here. Second, defendants state that statutory interpretation is not at issue in this matter, as the Plan Administrator was interpreting the Plan, not ERISA. Defendants dispute this, claiming that as a threshold matter the Administrator decided to evaluate plaintiffs' claims under the amended Plan rather than the original Plan, which necessarily involved a determination that the Plan was properly amended under ERISA. To the extent that the Plan Administrator did rely on its own statutory interpretation to arrive at its conclusion, such interpretations must be reviewed *de novo*, either by a court or by the arbitrator.

9

1       Finally, defendants assert that the language of the Plan providing that the arbitrator "shall apply the standard of a reviewing court under ERISA" means that an arbitrator will review statutory interpretation *de novo* notwithstanding the clause specifying that the standard of review is "arbitrary and capricious." This once again raises the issue of an ambiguous provision in an arbitration agreement. The court is called upon to adopt one of two troublesome contractual interpretations. Interpreting the provision as providing only for "arbitrary and capricious" review would render the preceding clause redundant. However, interpreting the provision as allowing for *de novo* review in certain circumstances would entail ignoring the "arbitrary and capricious" language.

      In light of the FAA's "rule of contract construction favoring arbitration," Kuehner, 84 F.3d at 319, the court holds that the proper construction allows for *de novo* review of the Administrator's statutory interpretation. The inclusion of the "namely" clause likely reflects the belief that, in the majority of cases, judicial review will be limited to interpretation of the Plan, not ERISA itself. It does not function to foreclose the standards of review available under ERISA for other types of challenges. Accordingly, because the Plan allows for the correct standard of review regarding plaintiffs' first cause of action, the arbitration provision is not unenforceable on that basis.

      As to plaintiffs' second cause of action, plaintiffs claim that the proper standard of review is "abuse of discretion review, tempered by skepticism commensurate with the plan administrator's conflict of interest." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 959 (9th Cir. 2003) (en banc); see also Firestone Tire & Rubber Co. v. Burch, 489 U.S. 101, 115 (1989) (holding that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion") (internal quotations omitted). Plaintiffs claim that the standard of review delineated by the Plan prevents the arbitrator from considering the administrator's conflict of interest and therefore imposes an improper standard of review.

      As defendants point out, nothing in the language of the Plan prevents the arbitrator from tempering its abuse of discretion review by considering the conflict of interest on the part of the administrator. Accordingly, the standard of review is proper under both causes of action, and the Plan's standard of review provision does not render the arbitration agreement unenforceable.

D.    Conclusion

Plaintiffs have identified only one instance in which the Plan is arguably inconsistent with ERISA—the amended Plan's failure to explicitly allow for recovery of attorneys' fees is inconsistent with the explicit availability of such fees under ERISA itself. The particular circumstances of this case, however, counsel against invalidating the arbitration clause on this basis. First, plaintiffs point to no case in which the unavailability of attorneys' fees in any context, let alone the ERISA context, was sufficient to void an arbitration agreement. Second, an arbitrator in this case may in fact award attorney fees, either by interpreting the amended Plan to allow for a fee award or by deciding that the original Plan, which explicitly provides for attorneys' fees, remains operative. Accordingly, this is a case in which an inconsistency between an ERISA-governed arbitration clause and the provisions of ERISA itself is such that the FAA's policy considerations tip the scales in favor of arbitration. The arbitration clause is therefore enforceable under the FAA.

III.   Unconscionability

As a separate basis for denial of arbitration, plaintiffs assert that the Plan is unconscionable under California law.[6] "[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is both a procedural and substantive element of unconscionability." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003). Plaintiffs raise arguments as to both procedural and substantive unconscionability.

A.    Procedural Unconscionability

To determine whether a contract is procedurally unconscionable, a court must first determine whether the contract is one of adhesion. Armendariz, 24 Cal. 4th at 113. If the contract is one of adhesion, it will be found procedurally unconscionable where the court finds oppression or surprise. Id.

The California Supreme Court has adopted the following definition of "contract of adhesion": "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject

1 it.'"  Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 817 (1981) (quoting Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961)).  It is undisputed that the Plan was presented to plaintiffs by defendants without affording defendants an opportunity to negotiate its terms.  This is sufficient to characterize the contract as one of adhesion.[7]

Having found that the Plan was a contract of adhesion, the next step is to determine whether oppression or surprise existed sufficient to render the contract unconscionable.  "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract."  Ingle, 328 F.3d at 1171.  Thus, although the inability to negotiate may render a contract adhesive, the contract is oppressive where there is a substantial difference in bargaining strength between the parties to the contract.  Here, the contract at issue was a Senior Executive Retention Benefit Plan, offered by a company to its senior executives in order to persuade them to remain with the company.  This was not a standard form employment, loan or consumer contract, which are often one-sided.  Although the terms of the Plan were pre-drafted, the executives were sophisticated businesspersons with ample professional opportunities.  In other words, if plaintiffs had decided to reject the terms of the Plan, they likely would have had little trouble finding comparable positions elsewhere.  Indeed, the company's desire to prevent this from happening was the impetus behind offering the Plan in the first place.  Plaintiffs' continued employment was not conditioned upon accepting the terms of the Plan.  In sum, the relative strength of plaintiffs and defendants dissuades this court from finding procedural unconscionability based on oppression.

Turning to surprise, "[s]urprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."  Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532, (1997) (internal quotations omitted).  Here, the arbitration provision is clearly set forth in the contract, not hidden in a printed form.  Furthermore, although plaintiffs claim that they were surprised that the arbitration provision limited their rights under ERISA, plaintiffs cite no authority suggesting that failure to comprehend the legal ramifications of a contract constitutes "surprise" for the purposes of unconscionability

12

where the terms themselves are clearly set forth. Plaintiff's purported surprise in this regard stems from their ignorance of ERISA, not from anything truly hidden in the contract.

Accordingly, the Plan is not procedurally unconscionable.

### B.     Substantive Unconscionability

A contract is substantively unconscionable if it produces "overly harsh or one-sided results." Armendariz, 24 Cal. 4th at 114 (internal quotations omitted). California courts require a "modicum of bilaterality" in an arbitration agreement. Id. at 117. Some degree of non-mutuality is acceptable so long as the non-mutuality is justified by "business realities." Id.

Plaintiffs claim that the arbitration provision is one-sided in that the arbitration provision applies only to claims brought by employees, rather than any legal action take by the employer pursuant to the Plan. Plaintiffs misinterpret the arbitration provision. The provision, in fact, states that the arbitration provisions therein "shall be absolutely exclusive for any and all purposes and fully applicable to each and every dispute regarding the Plan." Complt., Exh. 1 at 11; Exh. 2 at 11. Accordingly, the arbitration provision is not "one-sided" at all. It is equally binding on all parties.

Plaintiffs further assert that the arbitration provision is substantively unconscionable because it improperly limits available remedies as described above. Contracts that place limits on statutory remedies have been held to be substantively unconscionable. Armendariz, 24 Cal. 4th at 121; Ingle, 328 F.3d at 1179. However, as discussed above, the arbitration provision does not limit statutory remedies related to equitable relief and the proper standard of review, and attorneys' fees may be available in arbitration. Further, as the court has not found procedural unconscionability, any substantive unconscionability which may exist in the arbitration provision is insufficient to render the provision unenforceable.

CONCLUSION

For the reasons stated above, the court GRANTS defendant's motion to compel arbitration and to stay these proceedings.

IT IS SO ORDERED.

Dated: March 23, 2007                          _____
                                                MARILYN HALL PATEL
                                                District Judge
                                                United States District Court
                                                Northern District of California

# ENDNOTES

1. Unless otherwise noted, background facts are taken from the allegations in the complaint and the parties' declarations.

2. The case defendants cite for the suggestion that contractual interpretation in ERISA action proceeds independent of state law supports the holding in Scott. In Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993), the First Circuit held:

> "Because ERISA preempts state law related to employee benefit plans for the purpose of providing a uniform body of law, federal case law which has developed in interpreting ERISA plans governs rather than individual states' rules of contract interpretation. [Citation.] Because state law provides the richest source of law of contract interpretation, we have incorporated state law principles in the process of developing a body of federal common law."

3. As a separate inquiry, the court in Armendariz considered whether the contract at issue was unconscionable under California contract law.

4. For these reasons, defendants' attempts to factually distinguish Armendariz are unavailing. The Cole framework establishes categorical protections for the vindication of statutory rights. The fact that plaintiffs have brought an ERISA action is sufficient to implicate these requirements. The particular facts of this case are best considered as part of the unconscionability inquiry, discussed below.

5. In Chappel, 232 F.3d at 725 n.3, the plaintiff had challenged the validity of the arbitration clause based, in part, in its failure to provide for attorneys' fees, but the Ninth Circuit held that the argument had been waived by failure to renew it on appeal. In Brooks, 297 F.3d at 171–72, the court hinted that an arbitration clause's lack of attorneys' fees provision might render it problematic under Cole, but did not ultimately reach the issue.

6. As discussed above, ERISA's broad preemption language precludes the application of California law related to unconscionability. However, because the parties focus principally on Armendariz, and because the court has found little federal precedent addressing the narrow issue of unconscionable arbitration provisions in ERISA cases, the court will consider unconscionability based on the principles elucidated in that case.

7. Defendants cite a number of cases in an attempt to prove that the Plan is not a contract of adhesion. None of their cases support this conclusion. Contrary to defendants' reading of Vernon v. Drexel Burnham & Co., 52 Cal. App. 3d 706, 714–15 (1975), the court in that case explicitly found that the contract was *not* offered on a "take it or leave it" basis. The court in Madden v. Kaiser Found. Hosps., 17 Cal. 3d 699, 710 (1976), found that a contract was not one of adhesion because, although offered on a "take it or leave it" basis, the contract "lack[ed] the oppressive features which ha[d] characterized" adhesive contracts in the past. As this case is over thirty years old, the court

apparently did not distinguish between contracts which were adhesive and unenforceable and contracts which were adhesive but enforceable. Finally, the contract at issue in In re FPI/Agretech Secs. Litig., 105 F.3d 469 (1997), was a negotiated settlement agreement, not a pre-drafted contract.

**UNITED STATES DISTRICT COURT**
For the Northern District of California